**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION**

**JAMES J. MORROW,**

           **CASE NO. 2:13-CV-279**

    **Petitioner,**          **JUDGE JAMES L. GRAHAM**

                       **MAGISTRATE JUDGE ABEL**

    **v.**

**TERRY TIBBALS, WARDEN,**

    **Respondent.**

## REPORT AND RECOMMENDATION

Petitioner James J. Morrow, a state prisoner, brings the instant petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. This matter is before the Court on the instant petition, respondent's *Return of Writ,* petitioner's *Traverse,* and the exhibits of the parties. For the reasons that follow, the Magistrate Judge **RECOMMENDS** that this action be **DISMISSED.**

### Facts and Procedural History

The Ohio Fifth District Court of Appeals summarized the facts and procedural history of this case as follows:

> On May 23, 2010, Appellant and Brad Dunay visited the home of Robert Croy, a seventy-three year-old acquaintance of Dunay.
>
> The next morning, May 24, 2010, Appellant returned to Croy's home. Croy believed Appellant had returned with some DVD's to sell at a yard sale. However, when Croy opened the door, Appellant put a knife to Croy's neck and ordered him into a bedroom. Appellant then demanded Croy give him all of his money. Croy produced some money from his back pocket and retrieved a black fanny pack containing approximately $5,700.
>
> Appellant then dragged Croy to a bathroom by his shirt collar. Once in the bathroom, Appellant had Croy open a safe. When no additional money was found, Appellant pushed Croy to the floor and bound his hands with drawstring from a nearby sweatshirt. As

Appellant left the bathroom, he slammed the door shut, trapping Croy in the bathroom as the door had no interior door knob.

At trial, the State presented several witnesses who testified Appellant had told them he robbed an "old drug dealer" and had received approximately $6,000. The State further presented witnesses who saw Appellant with a black fanny pack. Specifically, Jennifer Tiller testified Appellant gave a black fanny pack to her step-father Martin Keifer. Martin Keifer testified Appellant gave him a black fanny pack. A black fanny back was later found in Martin Keifer's belongings, and Croy then identified the black fanny pack as the one containing the money Appellant stole from his residence.

On September 9, 2010, Appellant was convicted of aggravated burglary, in violation of R.C. 2911.11(A); aggravated robbery, in violation of R.C. 2911.01(A)(1); kidnapping, in violation of R.C. 2905.01(B)(1); kidnapping, in violation of R.C. 2905.01(B)(2); robbery, in violation of R.C. 2911.02(A)(1), theft, in violation of R.C. 2913.02(A)(1); and possession of criminal tools, in violation of R.C. 2923.24(A).

The trial court sentenced Appellant to a ten year prison term on the aggravated robbery charge, and a four year prison term to be served consecutively on the second kidnapping charge. The trial court also imposed a five year term of mandatory post-release control. Appellant now appeals, assigning as error:

"I. APPELLANT'S CONVICTION IS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE BECAUSE THERE WAS NOT ENOUGH CREDIBLE, COMPETENT EVIDENCE TO SUPPORT THE GOVERNMENT'S ALLEGATIONS.

"II. APPELLANT WAS DENIED THE RIGHT TO PRESENT A DEFENSE THROUGH CROSS EXAMINATION AND CONFRONTATION UNDER THE SIXTH AMENDMENT TO THE UNITED STATES CONSTITUTION AND ARTICLE I SECTION 10 OF THE OHIO CONSTITUTION WHEN THE TRIAL COURT PRECLUDED TRIAL COUNSEL FROM INQUIRING INTO THE COMPLAINING WITNESS'S MOTIVE'S TO LIE.

"III. APPELLANT WAS DENIED DUE PROCESS OF LAW UNDER THE FOURTEENTH AMENDMENT TO THE UNITED STATES CONSTITUTION AND ARTICLE I SECTION 16 OF THE OHIO CONSTITUTION AND ARTICLE I SECTION 10 OF

THE OHIO CONSTITUTION WHEN THE TRIAL COURT IMPOSED SENTENCES FOR BOTH AGGRAVATED ROBBERY AND KIDNAPPING."

*State v. Morrow*, No. 2010CAA100082, 2011 WL 5445414, at *1-2 (Ohio App. 5th Dist. Nov. 7, 2011).

The state appellate court further reviewed the testimony in this case in relevant part as follows:

> Robert Croy testified at trial:
>
> "Q. Now, when he came into your—came up to your door, did you open the screen door or did he open the screen door?
>
> "A. I put the latch on, unlocked it and he opened it.
>
> "Q. And what happened next?
>
> "A. He put a knife at my throat.
>
> "Q. Do you know if it was a small knife or a large knife?
>
> "A. He said, 'Don't look at the knife; don't look at me or I'll cut your throat.'
>
> "Q. And what was his—I assume he had a knife in one hand or was it in two?
>
> "A. He had one. I was wearing this shirt that day. He grabbed the back of my shirt and he never let go the whole time he was there. He never took the knife away from my throat.
>
> "Q. So describe what happened when he takes you inside?
>
> "A. He shoves me into my bedroom and says, 'I want all your money, I want it now or I'm going to cut your throat'.
>
> "Q. So what did you do when he demanded the money?
>
> "A. I gave it to him; told him where it was at.
>
> "Q. And where was it?

"A. Under my pillow.

"Q. Can you point on the diagram where it was?

"A. (Indicating). Under my pillow.

"Q. So you give him the money. What was it in at the time?

"A. I gave him the fanny pack and everything that that I had that wasn't in my pockets.

"Q. So what happens next?

"A. He asked if I had any other money. And I said, 'Yes, in my pants pocket.' I pulled that out and I gave that to him. And I had change in my right pocket and he says, 'I don't want the damn change.'

"Q. What happened next?

"A. He drags me to the bathroom, takes like a black rope out of a sweatshirt, a black hooded sweatshirt and ties me up with it. Before he done that, he made me open the safe that had my army discharge and everything like that is in the safe. He thought there was money there. So he made me open that.

"Q. So where are the safes located?

"A. Sitting on top of a black file cabinet I had in my bathroom.

"Q. And what did you normally keep in your safes?

"A. In that safe, I had army discharge papers, numerous watches, miscellaneous items special for me.

" * * *

"Q. So he takes you into the bathroom and he orders you to open the safe. What happens then at that point?

"A. He seen that there wasn't anything there. So he throwed [sic] me down on the floor and took the black tie out and proceeded to tie me up.

"Q. Now, were you still in the bathroom at that point when he tied you up.

"A. Yes, on the floor.

"Q. Was the sweatshirt in the bathroom at that time or did he bring it from somewhere else?

"A. It belongs beside the bathtub. There's a clothes line that's across the tub and it was hanging up there. The string had come out and it was lying on the floor. So that was the handiest thing he could find, you know.

" * * *

"Q. Now after you where [sic] tied up in your bathroom, what happened next?

"A. I didn't hear any sounds or anything, so I immediately proceeded to try my best to get loose. When I got loose—it took me a while to get up off the floor and get a hold of something to stand upright. And I took a chance and opened the bathroom door and there was nobody in the house that I could see. So I proceeded to get an old cell phone I had and called 911. He had stole mine from the side of my bed so I couldn't use it.'"
'

Tr. at 66–72.

The State then presented the testimony of Amber Steiner Appellant's ex-wife who testified Appellant told her he had "ganked a drug dealer and took drug money" in the amount of "six thousand dollars," and he was going back to prison. Tr. at 110.

Kisten Mathis testified at trial in May of 2010 Appellant called her and asked her to pick him up to return a van. Tr. At 122. She picked him up at a Super 8 Motel, dropped off the van and then took Appellant to Walmart. *Id*. At the Walmart, Appellant told Mathis he "robbed a drug dealer." Tr. at 123. He told her "he tied him up and he hit him," and "he got six grand." Tr. at 123. When they left Walmart, Appellant got out of the car and threw his cell phone down into a sewer. Tr. at 124. At the Walmart the phone kept ringing, and Appellant told Mathis, "They're probably trying to find me, trying to find where I'm at because I took this phone." Tr. at 124. She then testified to seeing Appellant with the "exact same" fanny pack as that introduced at trial. Tr. at 128.

Similarly, Jessica Aldridge testified Appellant told her "he went to somebody's house and he had seen a money and he had beat the

guy up pretty well and he took the money and it had six thousand dollars in it and he left." Tr. at 142.

Jennifer Tiller, with whom Appellant resided, testified to seeing a black fanny pack in his laundry basket on top of the dryer. Tr. at 158. She testified Appellant told her he had robbed a drug dealer and had gotten six thousand dollars. Tr. at 158. She then testified Appellant gave the fanny pack to her step father. Tr. at 159–160.

*State v. Morrow*, 2011 WL 5445414, at *2-4. On March 21, 2012, the Ohio Supreme Court dismissed petitioner's subsequent appeal. *State v. Morrow,* 131 Ohio St.3d 1484 (Ohio 2012).

On March 13, 2013, petitioner executed the habeas corpus petition now before the court. He asserts that he was denied a fair trial because the trial court prohibited defense counsel from cross-examining the alleged victim regarding his motive to lie (claim one); and that the trial court improperly denied his motion to merge allied offenses of similar import (claim two). It is the position of the respondent that petitioner's claims lack merit.

**Standard of Review**

These factual findings of the state appellate court are presumed to be correct. 28 U.S.C. § 2254(e)(1) provides:

In a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed to be correct. The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence.

28 U.S.C. § 2254(e)(1). Moreover, petitioner's claims do not provide a basis for relief, unless the decision unreasonably applied or contravened federal law, or constituted an unreasonable determination of the facts in light of the evidence presented. 28 U.S.C. § 2254(d)(1), (2).

The United State Supreme Court has described AEDPA as "a formidable barrier to federal habeas relief for prisoners whose claims have been adjudicated in state court" and emphasized that courts must not "lightly conclude that a State's criminal justice system has experienced the 'extreme malfunction' for which federal habeas relief is the remedy." *Burt v. Titlow,* —— U.S. ——, ——, 134 S.Ct. 10, 16 (2013) (quoting *Harrington v. Richter*, —— U.S. –——, ——, 131 S.Ct. 770, 786 (2011)); *see also Renico v. Lett*, 559 U.S. 766, 773 (2010) ("AEDPA ... imposes a highly deferential standard for evaluating state-court rulings, and demands that state-court decisions be given the benefit of the doubt." (internal quotation marks, citations, and footnote omitted)).

A state court's decision is "contrary to" Supreme Court precedent if (1) "the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law[,]" or (2) "the state court confronts facts that are materially indistinguishable from a relevant Supreme Court precedent and arrives" at a different result. *Williams v. Taylor*, 529 U.S. 362, 405, 120 S.Ct. 1495 (2000). A state court's decision is an "unreasonable application" under 28 U.S.C. § 2254(d)(1) if it "identifies the correct governing legal rule from [the Supreme] Court's cases but unreasonably applies it to the facts of the particular ... case" or either unreasonably extends or unreasonably refuses to extend a legal principle from Supreme Court precedent to a new context. *Id.* at 407, 529 U.S. 362. *Coley,* 706 F.3d at 748–49. The burden of satisfying the standards set forth in § 2254 rests with the petitioner. *Cullen v. Pinholster*, ——U.S. ——, ——, 131 S.Ct. 1388, 1398, 179 L.Ed.2d 557 (2011).

"In order for a federal court to find a state court's application of [Supreme Court precedent] unreasonable, ... [t]he state court's application must have been objectively unreasonable," not merely "incorrect or erroneous." *Wiggins v. Smith*, 539 U.S. 510, 520–21,

123 S.Ct. 2527 (2003) (internal quotation marks omitted) (citing *Williams v. Taylor*, 529. U.S. at 409 and *Lockyer v. Andrade*, 538 U.S. 63, 76 (2003)); *see also Harrington*, 131 S.Ct. at 786 ("A state court's determination that a claim lacks merit precludes federal habeas relief so long as " 'fairminded jurists could disagree' on the correctness of the state court's decision." (quoting *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)). In considering a claim of "unreasonable application" under § 2254(d)(1), courts must focus on the reasonableness of the result, not on the reasonableness of the state court's analysis. *Holder v. Palmer*, 588 F.3d 328, 341 (6th Cir. 2009) (" '[O]ur focus on the 'unreasonable application' test under Section 2254(d) should be on the ultimate legal conclusion that the state court reached and not whether the state court considered and discussed every angle of the evidence.' " (quoting *Neal v. Puckett*, 286 F.3d 230, 246 (5th Cir. 2002) (en banc)); *see also Nicely v. Mills,* 521 F. App'x 398, 403 (6th Cir. 2013) (considering evidence in the state court record that was "not expressly considered by the state court in its opinion" to evaluate the reasonableness of state court's decision). Relatedly, in evaluating the reasonableness of a state court's ultimate legal conclusion under § 2254(d)(1), a court must review the state court's decision based solely on the record that was before it at the time it rendered its decision. *Pinholster,* 131 S.Ct. at 1398. Put simply, "review under § 2254(d)(1) focuses on what a state court knew and did." *Id.* at 1399.

**Claim One**

In claim one, petitioner asserts that he was denied a fair trial because the trial court refused to permit adequate cross examination of witnesses against him. His claim presents issues of denial of the right to present a defense and the alleged violation of the Confrontation Clause as reviewed by the Ohio Court of Appeals. The state appellate court rejected petitioner's claim as follows:

Appellant maintains he was denied the right to present a defense and to cross-examine and confront witnesses when the trial court precluded him from inquiring into the complaining witnesses' motive to lie. Specifically, Appellant cites the trial court's sustaining objections to evidence relating to Croy's indictments and related behavior on at least four occasions.

Initially, we note the admission or exclusion of relevant evidence is within the sound discretion of the trial court. *State v. Sage* (1987), 31 Ohio St.3d 173.

First, Appellant cites the trial court's exclusion of testimony relating to money allegedly seized by the Delaware County Drug Task Force:

"Q. Now, there was also some money you had that wasn't in your possession; right?

"A. Pardon?

"Q. There was also a large amount of money that wasn't in your possession on that day?

"A. That wasn't in my possession?

"Q. Yes.

"A. I wouldn't know anything about that.

"Q. Did the Delaware County Task Force—

"Ms. O'Brien: Objection.

"The Court: Approach.

(Side-bar conference as follows.)

"The Court: What is your objection.

"Mr. Dumolt: Your Honor, that's what we talked about before with the indictment.

"The Court: Okay.

"Mr. Dumolt: It's going to the fact that the money was forfeited. It was physically forfeited. He's trying to talk about the money that's in the indictment, the possession of the Delaware County Task Force.

"Mr. Cornely: He said that was all the money he had.

"Mr. Dumolt: You can't prove that, and you're stuck with the—

"The Court: What's the date of that? This is September '09.

"Mr. Cornely: The indictment May 23rd and it hasn't been resolved. He said that's all the money he had, your honor.

"The Court: Do you want to argue this to the jury or me, John?

"Mr. Cornely: Sorry.

"The Court: I'll sustain the objection.

(Side-bar completed)."

Tr. At 90–91.

Ohio Evidence Rule 404(B) provides,

"Other crimes, wrongs or acts. Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident."

Upon review of the record Appellant has not demonstrated the relevance of the evidence. It is not evident from the record the trial court abused its discretion in excluding the testimony, and Appellant has not demonstrated otherwise.

Appellant's second citation refers to Appellant's trial counsel questioning Croy as to whether he ever traded drugs for money. Tr. at p. 97. The trial court allowed Croy to answer the question, but sustained the objection when counsel asked Croy whether he was ever charged with selling drugs.

The third and fourth occasions reference Appellant's testimony Croy is "one of his dudes that kind of gets ..." and Croy's selling things at yard sales and trading things for drugs.

Upon review of the testimony in its entirety, we find the trial court did not abuse its discretion in excluding the testimony cited by Appellant. The trial court herein did allow testimony to establish Croy had a history in dealing drugs. As set forth in the testimony cited in the analysis and disposition of the first assignment of error, numerous references were made to Appellant's robbing a "drug dealer." Appellant had ample opportunity throughout the trial to establish Croy was a drug dealer, and his theory of the case centered on the victim attempting to purchase drugs from him.

Assuming, *arguendo,* it was error to exclude the aforementioned testimony, we find Appellant has not demonstrated prejudice as a result thereof.

The second assignment of error is overruled.

*State v. Morrow*, 2011 WL 5445414, at *4-6.

Petitioner argues, *inter alia*, that the alleged victim, Robery Croy, had a powerful motive to lie due to impending drug charges against him. He complains that he was denied the ability to question Croy regarding his pending drug indictment, and thereby unable to establish Croy's motive to lie. This motive, according to petitioner, is related to the fact that, had Croy admitted he was involved in drug dealings, the State could have used the information against Croy in pursuing criminal charges. Petitioner wanted to establish that Croy gave him money to purchase drugs and that the Delaware Drug Task Force had seized $9,568.00 from Croy in an unrelated pending case.

The Sixth Amendment to the United States Constitution guarantees criminal defendants the right to physically confront and cross examine adverse witnesses at all stages of the trial. *Illinois v. Allen*, 397 U.S. 337, 388 (1970). A criminal defendant's right to cross-examine witnesses against him, however, is not unlimited. "Trial judges retain wide latitude ... to impose reasonable limits on such cross-examination based on concerns about, among other things, harassment, prejudice, confusion of the issues, the witness' safety, or interrogation that is repetitive or only marginally relevant." *Delaware v. Van Arsdall*, 475 U.S. 673, 679 (1986). The Confrontation Clause thus guarantees the opportunity for effective cross-examination, not cross-examination in whatever way or to whatever extent the defendant may desire. *Id*. (quoting *Delaware v. Fensterer*, 474 U.S. 15, 20 (1985)). *See also Norris v. Schotten*, 146 F.3d 314, 330

(6th Cir. 1998) (no Confrontation Clause violation where relevance of questions prohibited on cross-examination is unclear and the risk of prejudice real) (citations omitted).

Where a trial court limits the extent of a criminal defendant's cross-examination, but does not bar it completely, the trial court is afforded wider latitude. *Dorsey v. Parke*, 872 F.2d 163, 167 (6th Cir. 1989). Under such circumstances, the test is "whether the jury had enough information, despite the limits placed on otherwise permitted cross-examination, to assess the defense theory." *Drummond v. Houk*, 761 F.Supp.2d (N.D. Ohio 2010) (citing *Dorsey v. Parke*)).

The theory of the defense was that petitioner stole $ 900.00 from Croy, which Croy gave him to purchase crack cocaine. Petitioner kept that money, and used it, at least in part, to make a payment on his van, and never gave Croy the crack cocaine. According to petitioner, he told people that he "ganked" $900.00 from a drug dealer, but he could have taken much more. He could have beat him up and taken five to six thousand dollars, but did not. *See, e.g., Trial Transcript, Vol. II*, Pages 266, 275. Petitioner argued in opening that Croy had much more money than that taken by the petitioner. He wanted to establish Croy's status as a drug dealer by putting forth evidence that Croy had pending drug trafficking charges against him and that police had taken money from Croy that was alleged to have been used as a part of that crime. Petitioner does not contend, nor does the record reflect, that Croy was attempting to curry favor with the prosecution by testifying against petitioner. Petitioner appears instead to contend that Croy lied in pressing charges against petitioner and could not admit his real motive in testifying against petitioner – i.e., to get back at petitioner for stealing the $900.00 intended to be used for the purchase of crack cocaine.

Numerous witnesses testified as to petitioner's statement that he had stolen money from a drug dealer and petitioner r had ample opportunity to cross examine Croy in regard to this theory of defense – aside from bringing out the pending charges against Croy and money that had been taken by police. In any event, assuming *arguendo* that the trial court erred in refusing to permit that evidence, evidence of petitioner's guilt was overwhelming and he cannot establish prejudice such that habeas relief is warranted.

A Confrontation Clause violation is subject to harmless error analysis. "[I]n § 2254 proceedings a court must assess the prejudicial impact of constitutional error in a state-court criminal trial under the 'substantial and injurious effect' standard set forth in *Brecht [v. Abrahamson,* 507 U.S. 619 (1993) ]." *Fry v. Pliler*, 551 U.S. 112 2(007). "To resolve the harmless error issue, we now must ask whether the constitutional violation 'had substantial and injurious effect or influence in determining the jury's verdict.' " *Vasquez v. Jones*, 496 F.3d 564, 575 (6th Cir. 2007) (quoting *Brecht*, 507 U.S. at 623). This inquiry involves consideration of several factors including "the importance of the witness' testimony in the prosecution's case, whether the testimony was cumulative, the presence or absence of evidence corroborating or contradicting the testimony of the witness on material points, the extent of cross-examination otherwise permitted, and, of course, the overall strength of the prosecution's case." *Delaware v. Van Arsdall,* 475 U.S. 673, 684 (1986); *see also Earhart v. Konteh*, 589 F.3d 337, 345–46 (6th Cir. 2009) (applying the *Van Arsdall* factors under the *Brecht* standard). "If the constitutional error had no material effect, the verdict must stand. However, if the court has 'grave doubts' whether the error had a substantial or injurious effect or influence in determining the jury's verdict," the Court must grant the petitioner's writ. *Jensen v. Romanowski*, 590 F.3d 373, 379

(6th Cir.2009) (citing *O'Neal v. McAninch* 513 U.S. 432, 435–36 (1995); *Stallings v. Bobby*, 464 F.3d 576, 582 (2006)).

In addition to the testimony of the alleged victim, Jennifer Tiller testified that Morrow carried with him a "little blue blade," *Trial Transcript Vol. II,* at 342. She saw him in possession of Croy's stolen fanny pack, and Morrow told her he had stolen six thousand dollars from a drug dealer. *Id.* at 339-342. Martin Keifer testified that Morrow gave him Croy's fanny pack. *Id.* at 348. Amber Steiner, who had a child with him, testified that P Morrow shortly thereafter made a payment on their van and she did not know where the money came from. *Trial Transcript,* Vol. I, PageID# 287, 292. He told her he had "ganked" a drug dealer and took six thousand dollars. PageID# 293. Kristin Mathis testified that she went to Walmart with Morrow, who bought various items paid for in cash. Morrow told her he had robbed a drug dealer, that he had tied him up and hit him and stolen six thousand dollars. PageID# 303-306. He threw the cell phone he had taken from Croy down a sewer where it was later retrieved by police. PageID# 308. He had a black fanny pack with him that he said he had taken from the alleged victim. PageID# 311. Jessica Aldridge testified that Morrow told her he had beaten Croy and taken six thousand dollars. PageID# 323-25.

In view of other evidence alleging that Croy was a drug dealer, the extent of cross examination otherwise permitted, and overwhelming evidence of guilt, this Court does not conclude that any alleged error a substantial or injurious effect or influence in determining the jury's verdict or that the state appellate court contravened or unreasonably applied federal law in rejecting petitioner's claim, or that it constituted an unreasonable determination of the facts in light of the evidence presented. 28 U.S.C. § 2254(d)(1), (2).

Claim one is without merit.

**Claim Two**

In claim two, petitioner asserts that the trial court improperly sentenced him to consecutive terms of incarceration on counts two and four of the indictment without determining whether these charges constituted allied offenses of similar import (or thereby violated the Double Jeopardy Clause)[1] where there was a single animus to support both charges. *Petition*, PageID# 41.

The state appellate court rejected this claim in relevant part as follows:

> Appellant asserts the trial court erred in sentencing him on both the aggravated robbery and kidnapping charges as they are allied offenses of similar import.
>
> Ohio Revised Code 2941.25 provides,
>
> "(A) Where the same conduct by defendant can be construed to constitute two or more allied offenses of similar import, the indictment or information may contain counts for all such offenses, but the defendant may be convicted of only one.
>
> "(B) Where the defendant's conduct constitutes two or more offenses of dissimilar import, or where his conduct results in two or more offenses of the same or similar kind committed separately or with a separate animus as to each, the indictment or information may contain counts for all such offenses, and the defendant may be convicted of all of them."
>
> Recently, the Ohio Supreme Court, in *State v. Johnson*, 128 Ohio St.3d 1405, 2010–Ohio–6314, modified the test for determining whether offenses are allied offenses of similar import. In *Johnson*, the Ohio Supreme Court directed us to look at the elements of the offenses in question and determine whether or not it is possible to commit one offense and commit the other with the same conduct. If the answer to such question is in the affirmative, the court must then determine whether or not the offenses were committed by the same conduct. If the answer to the above two questions is yes, then the offenses are allied offenses of similar import and will be

---

[1] This Court has concluded that a petitioner preserves a claim under the Double Jeopardy Clause by raising the claim in the state courts under Ohio's statute on allied offenses, O.R.C. § 2941.25. This is because Ohio's statute is grounded on the same concerns as are addressed by the Double Jeopardy Clause. *See Ball v. Knab,* No. 2:09-cv-480, 2010 WL 4570226, at *6 (S.D. Ohio Oct. 12, 2010)(citation omitted).

merged. If, however, the court determines that commission of one offense will never result in the commission of the other, or if there is a separate animus for each offense, then the offenses will not merge according to *Johnson, supra*.

Appellant was convicted of aggravated robbery, in violation of R.C. 2911.11, which reads:

"(A) No person, in attempting or committing a theft offense, as defined in section 2913.01 of the Revised Code, or in fleeing immediately after the attempt or offense, shall do any of the following:

"(1) Have a deadly weapon on or about the offender's person or under the offender's control and either display the weapon, brandish it, indicate that the offender possesses it, or use it;

"(2) Have a dangerous ordnance on or about the offender's person or under the offender's control;

"(3) Inflict, or attempt to inflict, serious physical harm on another."

Appellant was further convicted of kidnapping, in violation of R.C. 2905.01(B)(2):

"(B) No person, by force, threat, or deception, or, in the case of a victim under the age of thirteen or mentally incompetent, by any means, shall knowingly do any of the following, under circumstances that create a substantial risk of serious physical harm to the victim or, in the case of a minor victim, under circumstances that either create a substantial risk of serious physical harm to the victim or cause physical harm to the victim:

"(1) Remove another from the place where the other person is found;

"(2) Restrain another of the other person's liberty."

The record indicates Appellant entered Croy's residence, held a knife to his throat, and forced him to the bedroom. Appellant demanded, "I want all your money, I want it now, or I am going to cut your throat." Appellant then received the $5,700 in cash Croy had in his bedroom. At this point in the series of events, Appellant had committed aggravated robbery. Appellant then led Croy to the bedroom and forced him to enter the safe, which he found did not contain money. However, Appellant then takes the separate act,

which is unnecessary to the commission of the already completed aggravated robbery, of binding Croy with the cord of a sweatshirt. He then leaves Croy on the floor of the bathroom, and slams the door shut with no handle on the inside, and exiting the residence with Croy's phone. We do not find the trial court erred in finding Appellant's commission of aggravated robbery and kidnapping were not allied offenses of similar import under the facts and circumstances as presented in this case.

*State v. Morrow*, 2011 WL 5445414, at *6-7.

The Double Jeopardy Clause of the Fifth Amendment, made applicable to the states through the Fourteenth Amendment, provides that no person shall "be subject for the same offence to be twice put in jeopardy of life or limb." U.S. Const. amend. V. The clause has been interpreted as protecting criminal defendants from successive prosecutions for the same offense after acquittal or conviction, as well as from multiple punishments for the same offense. *Brown v. Ohio,* 432 U.S. 161, 165 (1977). The traditional test for double jeopardy claims is the "same elements" test set forth in *Blockburger v. United States*, 284 U.S. 299, 304 (1932) (requiring a court to determine whether each charged offense "requires proof of an additional fact which the other does not"). The *Blockburger* test is designed to deal with the situation where closely connected conduct results in multiple charges under separate statutes. Under *Blockburger,* the critical question is whether the multiple charges in reality constitute the same offense. Thus, the *Blockburger* test focuses on whether the statutory elements of the two crimes charged are duplicative. If the elements of the two statutes are substantially the same, then double jeopardy is violated by charging the defendant under both.

In addition, a defendant cannot be prosecuted for a greater offense after conviction or acquittal of the lesser included offense. *Brown v. Ohio*. In *Brown,* the defendant was convicted on his guilty plea to the offense of joyriding and was subsequently convicted of the offense of auto theft. Both convictions were based on the same events. Under Ohio law, joyriding is a lesser

included offense of auto theft. The Supreme Court, noting that conviction on a charge of joyriding required no proof not required for conviction on a charge of auto theft, held that the subsequent prosecution of the greater charge was precluded by double jeopardy principles. *Id*., at 168–69. The Supreme Court emphasized that the prohibition of successive prosecutions serves a policy of finality, protecting a defendant from a government's attempts to re-litigate facts or secure additional penalties. *Id*., at 165–66.

Here, petitioner Morrow was convicted of two separate offenses involving separate and distinct acts. The charges of aggravated robbery and kidnapping each require proof of an additional fact which the other does not and therefore do not violate the Double Jeopardy Clause.

Claim two is without merit.

**Procedural Default**

Although respondent does not raise the issue,[2] petitioner also raises in claim one that the trial court prohibited defense counsel from cross examining Croy regarding certain cellular phone records. This claim plainly is waived.

In recognition of the equal obligation of the state courts to protect the constitutional rights of criminal defendants, and in order to prevent needless friction between the state and federal courts, a state criminal defendant with federal constitutional claims is required fairly to present those claims to the highest court of the state for consideration. 28 U.S.C. § 2254(b), (c). If he fails to do so, but still has an avenue open to him by which he may present the claims, his petition is subject to dismissal for failure to exhaust state remedies. *Id.; Anderson v. Harless*,

---

[2] As a general rule, procedural default is an affirmative defense that must be raised by the state at the first possible opportunity, or it will be waived. *Trest v. Cain*, 522 U.S. 87, 89 (1997); *Gray v. Netherland*, 518 U.S. 152, 166 (1996). However, this Court may recognize a procedural default not expressly raised by the state where, as here, petitioner will have the opportunity to respond to the procedural default in any objections he may file. *See Howard v. Bouchard*, 405 F.3d 459, 476 (6th Cir. 2005) (citing *Lorraine v. Coyle*, 291 F.3d 416, 426 (6th Cir. 2002); *Elzy v. United States*, 205 F.3d 882, 886 (6th Cir. 2000).

459 U.S. 4, 6 (1982) (*per curiam*); *Picard v. Connor,* 404 U.S. 270, 275–76 (1971). If, because of a procedural default, the petitioner can no longer present his claims to a state court, he has also waived them for purposes of federal habeas review unless he can demonstrate cause for the procedural default and actual prejudice resulting from the alleged constitutional error. *Murray v. Carrier,* 447 U.S. 478, 485 (1986); *Engle v. Issac*, 456 U.S. 107, 129 (1982); *Wainwright v. Sykes,* 433 U.S. 72, 87 (1977).

In the Sixth Circuit, a reviewing court must undertake a four-part analysis when the state argues that a federal habeas claim is precluded by the petitioner's failure to observe a state procedural rule. *Maupin v. Smith*, 785 F.2d 135, 138 (6th Cir. 1986). "First, the court must determine that there is a state procedural rule that is applicable to the petitioner's claim and that the petitioner failed to comply with the rule." *Id*. Second, a court must determine whether the state courts actually enforced the state procedural sanction. *Id*. Third, the court must decide whether the state procedural rule is an adequate and independent state ground on which the state can rely to foreclose review of a federal constitutional claim. *Id.* Finally, if the court has determined that a petitioner did not comply with a state procedural rule and that the rule was an adequate and independent basis on which to do so, then the petitioner is required to demonstrate that there was cause for him not to follow the procedural rule and that he was actually prejudiced by the alleged constitutional error. *Id*. This "cause and prejudice" analysis also applies to a failure to raise or preserve issues for review at the appellate level. Leroy v. Marshall, 757 F.2d 94 (6th Cir.1985).

Here, petitioner's allegation is readily apparent from the face of the record and therefore should have been raised on direct appeal, but was not. He may now no longer raise his claim in the Ohio courts under Ohio's doctrine of *res judicata,* which holds that errors which appear on

the face of the record must be raised on direct appeal or be deemed to have been forfeited. *See State v. Cole*, 2 Ohio St.3d 112 (1982); *State v. Ishmail*, 67 Ohio St.2d 16 (1981*); State v. Perry*, 10 Ohio St.2d 175.

The procedural rule barring petitioner's claim for relief constitutes adequate and independent state grounds for denying relief. The requirement that all available claims be asserted in the first appellate proceeding serves the state's interest in finality and in ensuring that claims are adjudicated at the earliest possible opportunity. Further, the doctrine of *res judicata* is stated in unmistakable terms in numerous Ohio decisions and Ohio courts have consistently refused to review claims on the merits under that doctrine. *See State v. Cole; State v. Ishmail; State v. Perry.*

The Court concludes that petitioner has waived his right to present his claim regarding cell phone records for federal habeas corpus review. Petitioner can still secure review of this claim on the merits if he demonstrates cause for his failure to follow the state procedural rules, as well as actual prejudice from the constitutional violations that he alleges.

> "'[C]ause' under the cause and prejudice test must be something external to the petitioner, something that cannot fairly be attributed to him[;] ... some objective factor external to the defense [that] impeded ... efforts to comply with the State's procedural rule." *Coleman v. Thompson,* 501 U.S. 722, 753, 111 S.Ct. 2546, 115 L.Ed.2d 640 (1991).

*Maples v. Stegall,* 340 F.3d 433, 438 (6th Cir. 2003).

The constitutionally ineffective assistance of counsel may constitute cause for a procedural default. *Edwards v. Carpenter*, 529 U.S. 446, 451(2000) (citing *Murray v. Carrier*, 477 U.S. 478, 488–89 (1986)). Petitioner has offered neither sufficient evidence of cause or prejudice to permit federal habeas corpus review. Petitioner cannot assert ineffective assistance of appellate counsel as cause for his failure to raise his claim on direct appeal, as such claim has

never been presented to the state courts, and therefore is likewise procedurally barred from review. *Edwards v. Carpenter*, 529 U.S. at 451–52 (2000) (internal citation omitted).

**Recommended Disposition**

**WHEREUPON**, the Magistrate Judge **RECOMMENDS** that this action be **DISMISSED.**

**Procedure on Objections**

If any party objects to this *Report and Recommendation*, that party may, within fourteen (14) days of the date of this report, file and serve on all parties written objections to those specific proposed findings or recommendations to which objection is made, together with supporting authority for the objection(s). A judge of this Court shall make a *de novo* determination of those portions of the report or specified proposed findings or recommendations to which objection is made. Upon proper objections, a judge of this Court may accept, reject, or modify, in whole or in part, the findings or recommendations made herein, may receive further evidence or may recommit this matter to the magistrate judge with instructions. 28 U.S.C. § 636(b)(1).

The parties are specifically advised that failure to object to the *Report and Recommendation* will result in a waiver of the right to have the district judge review the *Report and Recommendation de novo*, and also operates as a waiver of the right to appeal the decision of the District Court adopting the *Report and Recommendation. See Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).

The parties are further advised that, if they intend to file an appeal of any adverse decision, they may submit arguments in any objections filed, regarding whether a certificate of appealability should issue.

s/Mark R. Abel
United States Magistrate Judge
